The first case on the docket this morning is agenda number 12, number 126082, Western Illinois University v. Illinois Education Labor Relations Board. I understand that counsel will be sharing, splitting time and the clerk will give you a three minute warning and if you go over the agreed time, your co-counsel's time will be shortened, so remember that. Okay, please proceed. Frank, are you first? Frank Henry, BZAC. May it please the court. My name is Frank Bieschott and I represent the Illinois Educational Labor Relations Board. This court should affirm the board's opinion in order holding that the university violated sections 14A8 and 14A1 of the act by failing to comply with both the July 2017 and March 2018 arbitration awards. While this case concerns two unfair labor practice charges, the resolution of both charges turns on the same underlying issue, which is the validity of the March 2018 award. That is because the university has conceded that it has refused to comply with the March 2018 award and if the March 2018 award is valid, then the board did not clearly err by relying on the findings and conclusions in that award when determining that the university violated the July 2017 award. As the board determined, the March 2018 award was valid in binding because the arbitrator did not exceed either his statutory or his contractual authority when he retained jurisdiction over the implementation of the July 2017 award. On the statutory question, the board properly reasoned that the act did not deprive arbitrators of their widely accepted authority to retain jurisdiction over an award's implementation. And on the contractual issue, the board properly deferred to the arbitrator's interpretation of the CBA, which was supported by the agreement's text and standard presumptions regarding the scope of an arbitrator's authority. Turning to the statute, the act requires that every CBA contain a grievance resolution procedure that provides for binding arbitration. The act does not, however, define the scope of an arbitrator's authority. Given the absence of statutory language on the issue before it, the board took the reasonable approach of looking to general principles of law regarding an arbitrator's authority to retain jurisdiction over the implementation of an award, and then asking whether there was any basis to depart from those general principles in this case. Taking that approach, the board first determined that an arbitrator's authority to retain jurisdiction over enforcement matters has been widely upheld in the context of other state and federal statutes. The court or the board recognized that the act differed from those statutes to the extent that the act assigns responsibility for enforcing an award to the board instead of a court. But the board reasoned that that difference was immaterial here because the board's authority under the act was analogous to a court's authority under those other statutes. The university does not challenge the board's conclusion that an arbitrator's authority to retain jurisdiction over implementation issues has been widely upheld. Instead, it argues that all the authorities that the board reviewed are irrelevant because those statutes provide for judicial enforcement of an arbitration award. Counsel, is there a difference between implementation and reviewing for compliance? Practically speaking, not so much, I think, Your Honor. The term that was used below with the arbitrator's implementation award, and I think that sort of better captures what's going on because an arbitrator issues an award, the purpose of which is to obtain and ensure compliance with the CBA. And then the arbitrator then implements the award by essentially looking to the actions that were taken and whether or not that actually did achieve compliance. And so that's really what happened here, is that the board, the arbitrator and the board each performed their statutory functions. The arbitrator determined the university's compliance with the CBA's layoff provisions both before and after the July 2017 award. And then it was the board that determined whether or not the university complied with the act and decided whether the March 2018 award was valid and binding. The university's approach, which the appellate court adopted, improperly alters that framework and would require the board to decide contractual issues regarding a party's compliance with the terms of a CBA after an award has been issued, which is contrary to the traditional division of labor, whereby the arbitrators decide contractual issues and the board decides statutory issues. And indeed, this Court's decision in Compton, upon which the university principally relies, did not address the scope of an arbitrator's authority, and actually supports the board's conclusion that the board serves the same purpose and the same function under the act as courts do under those other statutes. In Compton, this Court held that the General Assembly intended to divest circuit courts of the authority or the responsibility to enforce arbitration awards and transferred that authority to the board. So in other words, the act simply transferred one set of responsibilities to the courts, to the board, without adding to or diminishing from the arbitrator's authority. To use a metaphor from property class back in law school, the arbitrator has a bundle of sticks. The courts have a bundle of sticks under the Uniform Arbitration Act, and all the act does is take the court's bundle and gives it to the board. Nothing about the underlying scope of an arbitrator's authority has changed, and nothing about the responsibility or the relationship between the arbitrator and the enforcement body has changed. And in doing so, also necessarily determined that the university failed to comply with the layoff provisions in the CBA, because that is the underlying issue that's driving both the CBA and the board. And so here, the board took a reasonable approach by reviewing general principles of law, and then correctly concluded that nothing in the act warranted departing from those principles here. Turning to the contractual issue, the board properly deferred to the arbitrator's interpretation of the CBA, which was supported by the text of the agreement, as well as the underlying presumption regarding the scope of an arbitrator's authority. Initially, the incorporation of the American Arbitration Association rules, or the AAA rules, in the CBA is determinative on this issue. And that is because the university's argument for why the AAA rules — well, first of all, actually, the university agrees that the AAA rules provide the arbitrator with the authority to rule on its own jurisdiction. The reason why the AAA rules do not apply depends entirely on the premise that the arbitrator exceeded his statutory authority. Specifically, the university argues that the AAA rules do not apply because another provision in the CBA preserved the party's statutory rights, which the university maintains includes the right to have the board decide its compliance with the award. So if the arbitrator did not exceed his statutory authority, he necessarily did not exceed his contractual authority. And if he exceeded his statutory authority, there's no need to get to the contractual issue anyway. Regardless, the arbitrator's interpretation of the CBA was supported by the text of the agreement, as well as the party's agreement to arbitrate any remedy for a CBA violation. It is consistent with the judicially blessed presumption that arbitrators have the authority to fully resolve the underlying dispute. The university's argument on the contractual issue, as well as the appellate court's decision, suffers from the fundamental flaw that it does not provide any deference to the arbitrator's interpretation of the CBA. As this Court has made clear, on review of an arbitrator's interpretation of the CBA, the question is not whether the arbitrator's decision was correct, but whether there was any interpretive root to that decision. Here, the board identified that interpretive root, and the board, therefore, did not clearly err by determining that the university violated the act by failing to comply with the July 2017 and March 2018 awards, and did not clearly err by refusing to consider evidence that was not before the arbitrator in the January 2018 hearing. And if Your Honor does not have any further questions, I'll reserve any other time for rebuttal. Thank you. Ms. Melissa Jo Auerbach. May it please the Court, I'm Melissa Auerbach, and I represent the University Professionals of Illinois Local 4100. The facts of this case illustrate the importance of the widespread and longstanding practice of labor arbitrators in retaining remedy jurisdiction after they issue an initial award. This case involved ten separate grievances of ten employees who were laid off. In order to try to avoid the need for the arbitrator to retain remedy jurisdiction, the parties would have had to try to foresee at the initial hearing all possible disputes that might arise were the arbitrator to grant all ten grievances completely and spend additional hearing time putting on evidence on all those potential remedy disputes. In fact, the arbitrator found that only two of the ten employees had been improperly laid off, and found that while all ten employees' grievances were valid to the extent that the university had failed to search for open positions, he ordered remedies for seven of them. The remedy dispute that arose involved one of the two employees found to have been improperly laid off, and three of the seven employees, with respect to whom the arbitrator found that an improper search for positions had been conducted. So the hearing that resulted when the arbitrator found a fact-finding hearing necessary on the remedy issues was limited to four of those ten employees, and the arbitrator found that the university had failed to implement his remedies ordered with respect to two of those employees. Counsel, isn't the failure to comply with a binding arbitration award a separate unfair labor practice? It is an unfair labor practice. It's the alternative to the procedure under the Uniform Arbitration Act where an employer fails to comply and the suit is brought in circuit court either to vacate by the employer or to confirm by the union. The same procedure applies in Federal court, where Federal courts have authority in the private sector to vacate and enforce labor arbitration awards. But the Federal courts have routinely and widespreadly held that arbitrators are the ones who should determine the contract disputes. In some cases, they've sent the parties back to an arbitrator, finding that these are where contract dispute issues arise with respect to remedy, that's for the arbitrator not the court. And, in fact, a finding in this case that the parties would be required to litigate remedy implementation disputes before the board in the first instance would essentially result in the board, rather than an arbitrator, conducting a portion of the arbitration hearing and interpreting the party's contract. And that is contrary to the requirements and public policy of the Illinois Educational Labor Relations Act requiring that grievance procedures provide for binding arbitration of disputes over the terms of the collective bargaining agreement. Wouldn't the board resolving these issues further the goal of uniformity, though, as opposed to numerous arbitrators making these decisions? No, because the uniformity, each contract dispute is so unique to the particular facts of the grievance. And so there is no way to achieve that uniformity. That's why it's been so wide, the widespread practice of arbitrators retaining jurisdiction to determine whether, what has to be done to comply with their remedies. An example is one of the most common types of grievances submitted to arbitration is a discharge for cause grievance, whether an employee was discharged for cause. And arbitrators routinely retain jurisdiction in those cases. Disputes arise with respect to the back pay where an arbitrator orders back pay in a make-all remedy for benefits. Disputes may arise as to the calculation of the back pay, whether the average overtime in employee work should be included, what interim earnings should be excluded, and, you know, what types of accrued benefits should be restored. Those are all particular to the particular contract and the particular employee in some cases. And that's not an issue that causes the concern of uniformity, because it's involved in the particular contract and the particular facts of every grievance. And in many cases, parties are able to obtain clarification from an arbitrator with simple written submissions after the award is issued in cases like the one before where the arbitrator found some fact disputes, and in those cases a second hearing is held. But the widespread practice of retention of jurisdiction overall benefits both employers and unions because it allows the parties to obtain clarification when there's a remedy dispute issue from an arbitrator who's already familiar with the particular contract and the particular facts of the case. And the uniformity that the Act intended to achieve by giving jurisdiction to the board was over the legal aspects of what constitutes a binding arbitration award and exceeding when an arbitrator exceeds his authority. But there's no way to achieve uniformity with respect to decisions that involve interpretation of a particular contract. There are many contracts in the state between many parties that are subject to the Illinois Education and Labor Relations Act. And even with respect to a particular contract, arbitrators may have different views, and that's what the parties are entitled to, is the arbitrator's view of the facts and what it takes to comply with a particular remedy. Counsel, if we agreed with you, what is the role of the board? The board's role is, as it said in its case, is to determine whether an award is binding. And in this case, there was no dispute that the first award was binding. The board looked at the facts before the arbitrator, and under this Court's precedence, the facts found by the arbitrator are presumptively correct. The board accepted those facts and found that the university had not complied with the supplemental award. And the role is very limited. And this Court has made clear in the Grigsville Ferry case that the review of arbitration awards is extremely limited, and the Court precedent is that procedural issues are for an arbitrator. The arbitrator found that it was not a new issue, that he was asked to decide whether the layoffs violated the contract, and if so, what should the remedy be. And part of the remedy was determining what it took to make whole these employees he found had to be made whole in certain respects. So implementation includes enforcement? The board, the arbitrator is determining whether the particular remedies he ordered have been implemented. It's different than the legal issue of the board determining whether there's been compliance with the Act. If there are no further questions, the University Professionals of Illinois requests that this be a public court decision and affirm the decision of the board. Thank you. Thank you, Ms. Albuquerque. For the Eppley, Ms. Abby Jane Clark. Good morning, and may it please the Court. I'm Abby Jane Clark. I'm here with my law partner, Roy G. Davis, on behalf of Western Illinois University. There are two problems with the arguments that are advanced by the Petitioners here. One is statutory and one is contractual. Now, the Fourth District's opinion laid out in great detail the underlying facts and the procedure in this case, and I don't see any reason to repeat them. And in fact, I'd suggest to you that there really is no reason to consider them at all, because what we have here is an issue that the parties submitted to arbitration, and we have an arbitrator who issued a final and binding arbitration award. And between the award and the Illinois Educational Labor Relations Act and this Court's prior opinions, we have everything that we need. So if we start with the Act, we really only need to make three quick stops here, starting with Section 1, the whole purpose of the Act in general, to regulate labor relations, including the resolution of disputes, and that this is best going to be accomplished by establishing procedures. So the point of the Act is to regulate and to establish procedures on how we're going to do that, such that it protects both employers' rights and employees' rights. So the Act is our roadmap here. How are we going to establish this procedure? Our next spot where we stop in the Act is Section 10c. And 10c is very clear. It requires that every single collective bargaining agreement in this facet has to contain that grievance resolution process, and it has to provide for binding arbitration of disputes, and not all disputes, but disputes concerning the administration or the interpretation of the contract. So we've got 10c saying we have to have binding arbitration, and then we flip to Section 14a.8 that says to the extent that a party refuses to comply with that binding arbitration award, that is an unfair labor practice that's within the exclusive jurisdiction of the Labor Board. Are you challenging the general authority of the arbitrator to retain jurisdiction over implementation of the award? Absolutely, Your Honor, in certain circumstances. The arbitrator, I think, can retain jurisdiction in some regard in terms of if there is an error in the award, absolutely the party should be able to go back to the arbitrator and have those clarifications made. But with respect to who decides whether an employer has complied with that binding arbitration award, that job goes to the Labor Board. It's statutorily predetermined there in Section 14a.8, and the Labor Board, this Court has held that this particular statute grants exclusive jurisdiction over ULPs to the Labor Board. So reviewing for compliance is not a part of implementation? No, absolutely not. Now, this case fits into that statutory framework that's laid out by the Act, because here we've got a dispute. It was a grievance regarding layoffs. We start with Section 10c. The parties submitted this to binding arbitration. The arbitrator issued a binding award. So now we're done with Section 10c. We are done with the arbitrator. We have a binding award. The union says the university didn't comply. We go to 14a.8 for the board to take over on unfair labor practice charge. Counsel? Yes. The opposing counsel mentioned, you know, the arbitrator is the one who's the most familiar with the case. Doesn't it make sense that the arbitrator would have the ability to retain jurisdiction to make sure that his or her order is being implemented? Well, I think the Eleanor legislature said otherwise, Your Honor, because the Eleanor legislature said that that is a job for the Labor Board. And I, again, I agree that there are certain circumstances in which the arbitrator may need to weigh in, again, clarifications, corrections of error, et cetera. But with respect to whether that has been complied with, that is a job for the Labor Board. Now, not only is in the Act, we've got 35 years of court precedent here that confirms that. We look back to the Compton case, where basically, you know, the court took a look at this and said, okay, whose job is this? And said, no, when we're talking about this particular statute, the Illinois Educational Labor Relations Act, authority is vested in the Labor Board. It's exclusive and it's primary in terms of its jurisdiction. Same thing with respect to Warren Township. And again, these cases are cited in the briefs. But opposing counsel's arguments regarding other types of law, regarding the national labor relations law, regarding Illinois commercial law, those don't have any sort of resemblance to our IDLR-A. They don't have any interplay here. They talk about the Pennsylvania statute, and Pennsylvania statute was certainly something that does have some similarities to the Illinois law. With respect to whether this Court should all of a sudden start answering to the courts of Pennsylvania in terms of how to interpret the Illinois statute, I think would be silly. Certainly, it's something you would consider. But Illinois intended to do something special here, to do something different. And when we start to talk about simply following Pennsylvania laws, that doesn't make a lot of sense in terms of what the legislature was looking here and the system and the procedure and the process that they sought to impose here. Now, there have been a couple questions regarding this theory about implementation versus failure to comply. And the argument's been made, well, that was just implementation. And all these other sources say, well, arbitrators can retain jurisdiction to resolve disputes over the remedies. What is the dispute over the remedy in this case? Now, there's no dispute over the remedy. There's a dispute over whether the university complied with the remedy. It's like putting lipstick on a pig. It's you can't have coextensive authority over the same subject matter at the same time. It's not a question about what the remedy is. It's whether the remedy complied is a 14A8 ULP question for the board. The theory that opposing counsel has laid out here requires us to go so many places. By the end of this, it looks like a family circus cartoon. We've had to go so many places to get the meaning and the effect that opposing counsel is trying to get out of the act here. To do that, you really have to torture the language. There's no reason that we have to do that. Our legislature could have very easily said the arbitrator will have mandatory binding arbitration, the arbitrator will issue a binding arbitration award, and will retain jurisdiction over implementation, and will retain jurisdiction as to compliance. Any of these other words that they want to use, our legislature could have very easily said that, and they didn't. So to do otherwise, we really have to twist those words, have to twist those statutes. And here there's a very easy path to where we need to go here. It's 10C that requires a binding arbitration award. We have one. 14A8 talks about what happens with that binding arbitration award, and it goes to the labor board. That's a clear path. It's consistent with the purpose of the act. We can leave here today with some clarity and some consistency and a road map going forward, or we can leave with a little bit of chaos, if you will. What stays with the arbitrator? What goes to the labor board? How do you ever get past the arbitrator if every single thing that an employer, for example, is doing, we file a new request for hearing with the arbitrator, that the arbitrator continues and continues and continues? How do we ever get to the labor board? So today, talking about streamline, talking about efficiency, and talking about that procedure and process that the act was meant to set up, the place for these decisions in order to promote efficiency, fairness, and consistency is they go to the labor board. And I said that there were two problems here, one statutory and one contractual. I want to talk just a little bit about the contractual issue, because even without the act, even without the statutory framework, in this situation, the arbitrator exceeded his contractual authority. And here what we start to do, we look back to the collective bargaining agreement. And this is the agreement between the parties. The parties have agreed to this language, and it very specifically says the arbitration is going to be confined solely to the application or interpretation of the agreement and the precise issue that was submitted for arbitration, solely and precise. The parties contracted for that language. Counsel, did the appellate court discuss at all the deferential standard of review from Grigsville? The appellate court? I don't think, Your Honor, because the appellate court has decided that both questions needed to be reviewed as a matter of law. So with respect to Grigsville, I think that opposing counsel has actually both parties have second Grigsville in this case in terms of arbitration and what's reviewable. I think that when we're talking about Grigsville, what we're looking at there is the underlying substance of an award. And in that situation, Your Honor, I do think that the labor board will give some deference to the factual findings of the arbitrator when it comes to the substance of the award. But here, what we're talking about, we're not even talking about the substance of the award. We're talking about compliance with the award after the arbitrator has issued that binding arbitration decision. I'm talking about whether the second award draws its essence from the CBA. It's a very deferential standard of review. It seems that there's at least arguable that the second award also draws its essence from the CBA. Well, Your Honor, I disagree with that, because when the arbitrator issues that final and binding award, that is that award that's reviewable. It's not what the party's original dispute was in front of the arbitrator. It's the award itself, because as we've talked about, arbitrators can go a lot of different ways with a lot of different interpretations of different contracts. And so there we've got the arbitrator's final award, and that's what's reviewable. So in terms of whether it draws its essence from the contract, that's not a situation where you necessarily even need to involve the contractor, because what's under review is that final and binding arbitration decision. So when we talk about the issues that were submitted to the arbitrator, it was a very specific list. It was two things. Did the university lay off these employees appropriately? And if they did not, what is the remedy? What is the remedy? It's a what. And so it doesn't say we're not submitting is the university complying with the remedy. We're not submitting the sole and precise issue of what happens after the arbitration award and how the university conducts itself. It's not about complying. It's not about satisfying. It's not about how the university is complying. It is were they laid off appropriately, and if not, what is the remedy? It's the what. The arbitrator has told us what the what is. The labor board gets to decide whether the university complied with the what. So whether it's statutory or whether it is contractual, the problems here are the judge decided issues that weren't, excuse me, the arbitrator decided issues that were within the exclusive jurisdiction of the board, and they're regulated either by the act or the contract and both. It's problematic either way. Your Honor, are there any other questions I can answer for you? All right. We'd ask that the Fourth District be affirmed. Thank you, Ms. Clark. And I understand that you both will be speaking five minutes each. All right. Thank you. Mr. Biscott. Thank you, Your Honor. I intend to address two major points in rebuttal. The first regards the text. Say your name. Oh, sorry. My name is Frank B.S. Schott, and I represent the Illinois Educational Labor Relations Board. On rebuttal, I intend to address two main points, the first regarding the text and purpose of the Act. Regarding the text of the Act, the only statutory language dealing with the issue today is Section 1488, which says that it is an unfair labor practice to refuse to comply with an arbitration award. There is no language in the Act regarding the scope of an arbitrator's authority, and the language regarding a board's exclusive jurisdiction comes from this Court's decisions in Compton and Warren Township, and those decisions involved whether or not the board had exclusive authority to enforce arbitration awards exclusive of the courts. So what this Court's reasoning in those cases was just that all the authority that used to go to the circuit court now goes to the board. And so as the board determined, the board serves the same very limited role in reviewing an arbitration award under the Act that a court does in reviewing an arbitration award under the Uniform Arbitration Act or other statutes. And so when we cite the Pennsylvania cases in our brief, it does not say that this backdrop and what the general principles were regarding an arbitrator's authority when the General Assembly passed the Act. And using the board's reasonable approach of using that as a starting point to determine the legislative intent in the absence of any statutory language on this issue, and as this Court has noted, in that circumstance, the board's interpretation of the Act is entitled to deference because the board is the agency that's been charged with enforcing and implementing the Act. And then on the contractual issue, the Grigsby — excuse me, Grigsville, sorry. The Grigsville deference to the arbitrator's interpretation of the CBA applies here. This Court made very clear that when parties enter into a CBA, it is the arbitrator's interpretation of the facts and the interpretation of the contract that the parties have agreed to. And the arbitrator's decision was reasonable here. There was an interpretive route. You had the language about agreeing to arbitrate the remedy. You also have the general presumption that arbitrators have the authority to fully resolve the underlying disputes. And as mentioned earlier, the express incorporation of the AAA rules, which allowed for the arbitrator to take this step, is determinant of that issue. And so unless Your Honor's have any further questions, the board would ask that you affirm the board and reverse the appellate court. Thank you very much. Ms. Auerbach? Melissa Auerbach for the University Professionals of Illinois, Local 4100. The arguments of the university are — the problem with them is highlighted by what happened at the hearing before the administrative law judge of the board in this case. The university — the union put on the record — just submitted the record before the arbitrator to the board, the transcripts and all the exhibits and the parties' briefs and the arbitrator's awards. The university called witnesses, including a witness that had not called before the arbitrator, and introduced evidence that had not introduced before the arbitrator, and basically sought a second bite at the apple on whether the remedies the arbitrator ordered for the two employees still at issue, Daniel O'Baharia and Hallie Stovall, had been properly implemented, and asked the administrative law judge to apply this new evidence to the contract terms and find that the university had implemented the remedies. So, essentially, the university was seeking a new arbitration hearing and contract interpretation by the board's administrative law judge and ultimately the board. And that is not what's envisioned by the structure of the Act and the — and this Court's decision in Grigsville-Perry giving great deference to the arbitrator, including the arbitrator's interpretation of procedural issues such as whether the — what — whether the remedies are implemented falls within the precise issue submitted to the arbitrator. And there was multiple exchange of correspondence with the arbitrator, and he found — he found, I could not decide if this was a new issue, but this was part of the initial issue submitted to me, which was what shall the remedy be. And that's part of the dispute. And that dispute was properly decided by the arbitrator and the board properly so found. And that decision was in accordance with the Act's structure and the deference given to — to arbitrators under the — under the Act. And the reason this issue has not reached this Court after so many years of the statute being in effect is because it is so routinely — it so routinely happens that arbitrators retain jurisdiction. It's not questioned by the arbitrators or the parties in most cases. It happens, and it benefits everyone, and it avoids unnecessary litigation before the board. So the University of — Professors of Illinois requested this Court affirm the board's decision. Thank you. Case number 126082, Western Illinois University versus the Illinois Education and Labor Relations Board, known as Agenda Number 12, will be taken under advisement by the Court. Thank you, Mr. Dueskat, Ms. Auerbach, and Ms. Clark, for your arguments this morning.